UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-61031-CIV-DIMITROULEAS

TANGSHAN GANGLU,
IRON & STEEL CO., LTD.,

     Plaintiff,

vs.

BECKER& POLIAKOFF, P.A. and
PAMELA ANSELMO,

Defendants.

_____/

### DEFENDANTS' MOTION TO STAY PENDING THE RELATED
### BANKRUPTCY ACTION AND MEMORANDUM OF LAW

     Defendants Becker & Poliakoff, P.A. ("B&P") and Pamela Anselmo ("Anselmo")
move to stay this proceeding pending the disposition of a related bankruptcy action.

### INTRODUCTION

     Defendants seek to stay this matter pending the outcome of a directly related and
ongoing bankruptcy action.  Plaintiff is seeking to recover substantially the *same* elements
of damages in the *In re Fashion Mall*[1] case pending in the Bankruptcy Court for the
Southern District of Florida that it seeks in this case.  Plaintiff alleges that its damages in
this action are contingent upon the adjudication of the bankruptcy action.  *See* Complaint
¶ 131.  Because Plaintiff has the potential to recover all or a substantial amount of the

---

[1] The three 2014 bankruptcy actions that are pending in the Bankruptcy Court for the Southern District of Florida
are: US Capital/Fashion Mall, LLC (14-32819-JKO); US Capital Holdings, LLC (14-32822-JKO); and Mapuche, LLC (14-
32827-JKO). The three cases are being jointly administered under *In re Fashion Mall* (14-32819-JKO) pursuant to the
bankruptcy court's order date November 9, 2014 [14-32819-JKO, ECF No. 53]

damages it alleges it sustained in this action,[2] Defendants request that this Court stay the matter pending resolution of the related and pending bankruptcy action.

This action stems from Defendants' alleged representation of Tangshan Ganglu Iron & Steel Co., Ltd.'s ("Ganglu") related to the Plantation Fashion Mall. The Plantation Fashion Mall has been an economic failure since Ganglu's Chairman, Zhen Zeng Du ("Mr. Du") and Wei Chen ("Mr. Chen") have been involved for multiple reasons unrelated to this malpractice suit or Defendants' actions. Plaintiff and Mr. Du are now looking for a deep pocket to attempt to recover losses caused by their own acts or omissions by bringing this legal malpractice action, in addition to Ganglu's creditor claim for $48.65 million[3] in the pending bankruptcy action, to cast blame elsewhere to recover their financial losses.

For the purpose of this motion, Plaintiff's claims for damages can be segregated into two categories. First, Plaintiff alleges damages related to a $48.65 million loan that Plaintiff provided to Mapuche, LLC in 2012. *See e.g.* Compl. at ¶ 131. Second, Plaintiff alleges damages of "no less than $140 million" based on the amount of money that Plaintiff loaned and invested in Plantation Fashion Mall from approximately 2004 through 2012, which includes the $48.65 million dollar loan from 2012. *See e.g. Id.* ¶ 132.

Plaintiff and Mr. Du allege they invested/loaned over $100 million dollars in the Plantation Fashion Mall redevelopment project ("Project"), from 2004 to 2010. In 2012, two entities involved in the Project filed for Chapter 11 bankruptcy in the Southern District

---

[2] Plaintiff first allege a loss from loans that exceeds approximately $30 million dollars, contingent upon the outcome of the bankruptcy case. *See* Compl. ¶ 131. However, Plaintiff later alleges a loss of investment of over $100 million that occurred prior to 2012. *Id.* ¶ 132. As discussed below, the statute of limitations on any alleged loss that occurred prior to 2012 has expired.

[3] Ganglu's creditor claim was filed in the Bankruptcy Court for the Southern District of Florida *In re Mapuche, LLC* (14-32827-JKO) under claim number 12-1. The claim documents are included in **Exhibit "5"**.

of Florida.[4]   Despite the complete lack of progress or success in the Project, Plaintiff purportedly loaned/invested an additional $48.65 million to pay off all creditors in the 2012 Bankruptcy and fund the ongoing costs for the Project.  Plaintiff anointed Mr. Chen as Plaintiff's representative and the manager of the Project from 2004 until late April/early May 2014.  Mr. Chen remained in charge of the Project from 2004 through the date the Project related entities filed for Chapter 7 bankruptcy on October 14, 2014.

Despite the fact that there was no attorney-client relationship between Plaintiff and Defendants; no representation agreement or letters of representation; no legal bills for services to the Plaintiff; no payments by Plaintiff directly to Defendants for legal services; and no correspondence or communication from Plaintiff to Defendants retaining the Defendants or even corresponding with them from 2004 – May 2014 regarding legal services, Plaintiff seeks over $140 million dollars in damages against Defendants for alleged legal representation that Plaintiff claims existed for almost a decade without any representation agreement whatsoever.   However, because Plaintiff's damages are contingent upon the outcome of the pending and related bankruptcy action, Defendants request that this matter be stayed pending the resolution of the bankruptcy action.

## FACTS RELEVANT TO THE REQUEST FOR A STAY

1. Plaintiff alleges claims against Defendants for legal malpractice and breach of fiduciary duty related to Defendants' alleged representation of Plaintiff.  [D.E. 1]

---

[4] The two 2012 bankruptcy actions that were filed Southern District of Florida: were US Capital/Fashion Mall, LLC (12-14517-JKO) and US Capital Holdings, LLC (12-14519-JKO).  The cases were jointly administered under 12-14517-JKO.

2.  Defendants dispute they ever represented Plaintiff or Mr. Du individually or that Plaintiff has sufficiently plead such a relationship.  Defendants are filing a Motion to Dismiss Plaintiff's Complaint under a separate cover.

3.  The principal entities that owned and/or controlled the development of the property formerly known as the Plantation Fashion Mall were Mapuche, LLC ("Mapuche"), US Capital Holdings, LLC ("Holdings"), and US Capital/Fashion Mall, LLC ("Capital/Fashion") (collectively referred to as "Fashion Mall Entities").  *See* Compl. at ¶¶ 13–15.

4.  Defendants previously represented the Fashion Mall Entities.

5.  Plaintiff owned in interest in Mapuche.  The remaining interest in Mapuche was owned by Mr. Chen.  *Id.* at ¶13.

6.  The Fashion Mall Entities had many full time employees, including a general counsel and a certified public accountant.

7.  During all relevant time periods, Plaintiff and Mr. Du relied on Mr. Chen to manage the Fashion Mall Entities.

8.  Mr. Chen and Mr. Du both speak Mandarin Chinese.  Mr. Chen and Mr. Du cannot speak or read English.  Testimony from Zhen Zeng Du and Mr. Chen that confirms they do not speak English is attached as **Exhibit "1"**.

9.  During Defendants' representation of the Fashion Mall Entities, Defendants took direction from in-house general counsel and/or the executive vice president of the Fashion Mall Entities.

10. Plaintiff alleges that Plaintiff loaned or invested over $100 million dollars in the Fashion Mall Entities by 2010.  *See* Compl. at ¶ 65.

11. On February 24, 2012, Holdings and Capital/Fashion sought reorganization under Chapter 11 and filed for bankruptcy. *Id.* at ¶95.

12. The 2012 Holdings and Capital/Fashion bankruptcies were jointly administered under the case styled *In re US Capital Holdings, LLC* Case No. 12-14517-JKO ("2012 Bankruptcy").

13. Gray Robinson represented the Holdings and Capital/Fashion in the 2012 Bankruptcy. *See* Summary of Final Fee Application of Debtors' Counsel *In re US Capital Holdings, LLC* Case No. 12-14517-JKO, ECF No. 292, and attached hereto as **Exhibit "2"**.

14. Prior to the 2012 Bankruptcy, Gray Robinson previously represented the Holdings and Capital/Fashion on other issues. *Id.*

15. Defendants did not represent the Holdings or Capital/Fashion in the 2012 Bankruptcy. B&P was a creditor in the 2012 Bankruptcy. *See* Final Report and Motion for Entry of Final Decree *In re US Capital Holdings, LLC* Case No. 12-14517-JKO, ECF No. 510, and attached hereto as **Exhibit "3"**.

16. Plaintiff was aware of the 2012 Bankruptcy. *See e.g.* Compl. at ¶¶ 97–99.

17. The public docket for the 2012 Bankruptcy lists all creditors and claims against Holdings and Capital/Fashion, and the Final Report details how more than $22 million dollars was paid to creditors so that Holdings and Capital/Fashion could exit the 2012 Bankruptcy. *See* **Exs "2" & "3"**.

18. Notably, the following significant creditors were paid so that Holdings and Capital/Fashion could emerge from the 2012 Bankruptcy:

    a. $17,266,570.67 to Canpartners for a 2010 loan;

b. $4,501,721.41 to Bonefish/South Florida-I, LP, Cheeseburger-South Florida, LP and OS Tropical, LLC; and

c. $438,785.00 to Gray Robinson for attorney's fees.

*See* **Ex. "3"**.

19. Mr. Chen was a creditor in the 2012 Bankruptcy and was paid $20,040.32. Mr. Du's purported daughter-in-law, Xue Han, was also a creditor who received full payment of her claim in the 2012 Bankruptcy. *See* **Ex. "3"**.

20. Plaintiff admits it agreed "to lend substantial funds through Mapuche to fund the bankruptcy reorganization plan" of Holdings and Capital/Fashion. *See Compl.* ¶ at 96.

21. Plaintiff and Mr. Du allegedly lent Mapuche $48,650,000.00 so that Holdings and Capital/Fashion could emerge from bankruptcy. *Id.* at ¶ 98.

22. The funds provided by Plaintiff and Mr. Du "were used to fund all obligations to creditors and professionals associated with the bankruptcy proceedings." *Id.* at ¶ 98.

23. A filing in the 2012 Bankruptcy indicates that Plaintiff agreed to provide the funds in accordance with the bankruptcy plan "provided that the plan is confirmed by the U.S. Bankruptcy Court and provided that Mr. Wei Chen remains as manager of US Capital Holdings, LLC." *See* Notice of Filing Commitment Letter from Tangshan Ganglu Iron & Steel Co. Ltd., Filed by Debtor US Capital Holdings, LLC *In re US*

*Capital Holdings, LLC* Case No. 12-14517-JKO, ECF No. 360, and attached hereto as **Exhibit "4"**.[5]

24. After paying approximately $22 million in creditor claims, Holdings and Capital/Fashion emerged from the 2012 Bankruptcy, approximately $26,650,000.00 of the money Plaintiff and Mr. Du lent to Mapuche remained to develop and operate the Project.

25. In providing the $48,650,000.00, Plaintiff presumably had or could have demanded access to company financial documents and records. Plaintiff also had access to the claims to identify each creditor and evaluate the claims against Holdings and Capital/Fashion (all claims were public filings). Plaintiff also could have put in place whatever safeguards or protections it required when it agreed to loan the additional $48,650,000.00.

26. Plaintiff alleges that Mr. Chen used amended operating agreements to obtain a $15 million loan from Canpartners in 2010. *Id.* at ¶ 91.

27. Plaintiff alleges it did not know that amended operating agreements for the Fashion Mall Entities were executed in 2010. *See* Compl. at ¶ 67.

28. Plaintiff now alleges that but for Defendants' actions in drafting and failing to notify Plaintiff of the amended operating agreements in 2010, Plaintiff "would not have lent $48.65 million to Mapuche." *Id.* at ¶ 131.

29. After Holdings and Capital/Fashion emerged from the 2012 Bankruptcy, the Fashion Mall Entities continued to operate until 2014. *See e.g.* Compl. at ¶ 104

---

[5] The bankruptcy plan for the 2012 Bankruptcy can be found in *In re US Capital Holdings, LLC* Case No. 12-14517-JKO, ECF No. 258 as modified by ECF Nos. 368 and 390. The Court can take judicial notice of these documents pursuant to Federal Rule of Evidence 201.

(detailing an alleged 2014 meeting between Mr. Chen and Mr. Du related to the Project).

30. In 2014, "Mr. Du travelled to Florida" to inspect the properties and "collect repayment of the loan." *See* Compl. at ¶ 104.

31. Mr. Du alleges that in Florida, he met with Mapuche's accountant and requested a meeting with Mapuche employees. *Id.* at ¶ 105.

32. Plaintiff alleges that it sought judicial dissolution of the Fashion Mall Entities in 2014 so that Plaintiff and Mr. Du could take control of the assets of the company. *Id.* at ¶ 109.

33. Following the attempt to dissolve the company, litigation ensued between Plaintiff, Mapuche, Mr. Chen, and Mr. Du. *Id.* at ¶¶ 108–110.

34. Plaintiff also alleges that Mr. Chen, the only other member of Mapuche (and its manager), breached fiduciary duties to Mapuche and Plaintiff. *See e.g. Id.* at ¶ 103.

35. On October 14, 2014, the Fashion Mall Entities filed for voluntary Chapter 7 bankruptcy. *Id.* at ¶ 120.

36. The Mapuche, Holdings, and Capital/Fashion bankruptcies are being jointly administered under the Capital/Fashion bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of Florida in Ft. Lauderdale under case number 14-32819-JKO ("2014 Bankruptcy Proceeding"). *See* Declaration of J. Chris Bristow attached as **Exhibit "5"**.

37. During the course of the 2014 Bankruptcy Proceeding, the title to the Plantation Fashion Mall was sold at auction, along with other assets from the Fashion Mall

Entities.  The Plantation Fashion Mall property was sold for $37,700,000.00 at auction to EHOFDH Development, LLC.  *See* **Ex. "5"**.

38. In the 2014 Bankruptcy Proceeding, Plaintiff has asserted a claim for $48,650,000.00 against Mapuche, the parent company for the Fashion Mall Entities.  *See* **Ex. "5"**.

39. In the 2014 Bankruptcy Proceeding, the most recent report from the bankruptcy trustee shows that it is still attempting to collect assets and currently holds $18,483,882.88 in an investment account.  *See* **Ex. "5"**.

40. Plaintiff is the largest creditor in the 2014 Bankruptcy Proceeding.  *See* **Ex. "5"**.

41. Plaintiff alleges that its damages in this action are contingent upon the adjudication of the 2014 Bankruptcy Proceeding.  *See* Compl. at ¶ 131.

42. The 2014 Bankruptcy Proceeding is currently pending, with Rule 2004 examinations of employees and representatives of the Fashion Mall Entities being scheduled and conducted.  *See* **Ex. "5"**.

43. A number of claims have been or will be adjudicated in the 2014 Bankruptcy Proceeding.  Defendants anticipate adversary actions will be filed and tried in the 2014 Bankruptcy Proceeding.

44. If Plaintiff is successful with its claim in the 2014 Bankruptcy Proceeding, Plaintiff could receive well in excess of $18,000,000.00.  *See e.g.* **Ex "5"** (listing the remaining assets of the Trustee's report).

45. If Plaintiff receives all or substantially all of the remaining funds being held by the Trustee in the 2014 Bankruptcy, Plaintiff's alleged damages, if any, will be substantially reduced.

46. Pursuant to Local Rule 7, Defendants have conferred with Plaintiff's counsel regarding the relief requested herein, the parties were unable to reach an agreement or narrow the issues.

## MEMORANDUM OF LAW

### I. This case should be stayed pending the resolution of the 2014 Bankruptcy Proceeding

This matter should be stayed pending the resolution of the 2014 Bankruptcy Proceeding wherein Plaintiff is claiming substantially the *same* elements of damages that Plaintiff seeks in this case.   Under Florida law, a claim for professional malpractice, whether legal or otherwise, is premature where the resolution of an underlying action or event is necessary to establish that any legally recoverable damages have yet to be suffered by a would-be plaintiff.  *Bierdman v. Miller*, 639 So. 2d 627 (Fla. 3d DCA 1994). The proper remedy for premature litigation is to stay the claim until its maturation under the law.  *Burgess v. Lippman*, 929 So. 2d 1097, 1098 (Fla. 4th DCA 2006).

In *Bierdman*, the plaintiff sued a law firm for legal malpractice, claiming the firm negligently drafted an agreement and failed to protect the interests of the plaintiff. 639 So. 2d at 627. The legal malpractice action was filed while a suit was pending in federal court regarding the plaintiff's liability under the agreement. *Id.* at 627-28. The court stayed the malpractice action because a redressable harm had not yet been established. *Id.* at 628. The court explained that "[u]ntil the validity of the agreement is decided in federal court, there can be no determination in a malpractice action as to whether Bierdman was negligent in negotiating and drafting that agreement." *Id. See also Miller v. Lindback Const. Corp.*, 782 So. 2d 903, 904 (Fla. 3d DCA 2001) (legal malpractice action severed from contract action and stayed as premature because "it is impossible at this time to

determine whether [plaintiff] has suffered a redressable harm…"); *Loftin v. KPMG, LLP,* 2003 WL 22225621 (S.D. Fla. September 10, 2003) (legal malpractice claim dismissed as premature in light of ongoing dispute between investment firm and investors); *cf Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061 (Fla. 2001) (professional malpractice action alleging negligent failure to procure insurance coverage premature where underlying suit for insurance coverage remains pending).

This case should be stayed while the 2014 Bankruptcy Proceeding is pending in that Plaintiff's damages, if any, are unknown at this time.  The Southern District of New York addressed a similar situation in *Washington Mutual Bank v. Law Office of Robert Jay Gumenick, P.C.* 561 F. Supp. 2d 410, 411 (S.D.N.Y. 2008).  In that case, *Washington Mutual*, the client, asserted a claim for legal malpractice against its law firm for its failure to obtain a priority lien on a mortgage. *Id.*  The mortgaged property was eventually put into bankruptcy and the client asserted a claim in bankruptcy for the full lien amount. *Id.* The court stayed the legal malpractice action pending the resolution of the bankruptcy action on the grounds of comity, judicial economy, and the possibility that client could obtain substantial relief in the bankruptcy action. *Id.*

Here, Plaintiff is claiming substantially the *same* elements of damages in the 2014 Bankruptcy Proceeding.  Plaintiff is the largest remaining unsecured creditor in the 2014 Bankruptcy Proceeding.   The Trustee received $37,700,000.00 for the sale of the Plantation Fashion Mall property and has over $18 million remaining to extinguish the remaining claims, including Plaintiff's claim.  *See* **Ex "5"**.  The Trustee also has additional avenues to recover additional proceeds through adversary proceedings.  If Plaintiff is successful on its creditors claim in the 2014 Bankruptcy Proceeding, Plaintiff has the

potential to recover a significant sum of money it purportedly lent to Mapuche.  Plaintiff alleges that its damages in this action are contingent upon the adjudication of the 2014 Bankruptcy Proceeding.  *See* Compl. ¶ at 131.  Thus, the outcome in the 2014 Bankruptcy Proceeding will have a significant impact on Plaintiff's claimed damages in this case.

Plaintiff seeks to put the cart before the horse.  Plaintiff's alleged damages are based upon money Plaintiff purportedly loaned and/or invested in Mapuche, which in turn loaned money to Holdings or Capital/Fashion.  Plaintiff should be required to pursue its $48.65 million claim in the 2014 Bankruptcy Proceeding and exhaust its remedies against these entities before it seeks to recover from the Defendants in this case.  *See e.g. Greenberg Traurig Hoffman Lipoff Rosen & Quentel, P.A. v. Sun NLF Ltd. Partnership*, 719 So.2d 1029 (Fla. 3d DCA 1998) (staying a legal malpractice action that was contingent upon on an underlying action).  Plaintiff concedes that the "eventual distribution" from the 2014 Bankruptcy Proceeding that will impact Plaintiff's damages in this case. *See* Compl. at ¶ 131.  Defendants are entitled to know their potential exposure, if any, after Plaintiff has pursued its claim against the Fashion Mall Entities.  Accordingly, this matter should be stayed pending the resolution of the 2014 Bankruptcy Proceeding.

A stay makes complete sense.  Plaintiff loaned/invested money with Mapuche.  Plaintiff knew (and required) that its loaned money would be used: (1) to satisfy creditor claims in excess of $22 million for the 2012 Bankruptcy (*See* **Exs "2", "3", & "4"**); (2) to fund the continued operation of the Project.  Currently, the Trustee has more than $18 million to extinguish existing claims in the 2014 Bankruptcy.  *See* **Ex "5"**.  Therefore, the $22 million to pay claims from the 2012 Bankruptcy and the more than $18 million that remains in the 2014 Bankruptcy represents at least $40 million of Plaintiff's $48.65 million

that Plaintiff alleges as damages since 2012. If Plaintiff is successful in having the entity to which Plaintiff loan/invested the money (Mapuche) repay Plaintiff, then there may be no basis for Plaintiff's claim against the Defendants.

## II.      The case should be stayed to prevent double recovery on behalf of the Plaintiff

The matter should be stayed to until the completion of the 2014 Bankruptcy Proceeding. As outlined herein, the damages Plaintiff seeks in this case are substantially the same as the claim Plaintiff has made in the Bankruptcy Case. The trustee in the 2014 Bankruptcy Proceeding currently has millions of dollars to extinguish claims, including Plaintiff's claim. *See* **Ex "5"**. Plaintiff acknowledges that there will be "an eventual distribution" from the 2014 Bankruptcy Proceeding that will impact Plaintiff's damages in this case. *See* Compl. at ¶ 131. If this matter were to proceed concurrently with the 2014 Bankruptcy Proceeding, Plaintiff, if it were successful in both proceedings, could potentially make a double recovery, which is prohibited by Florida law. *See e.g. Kingswharf, Ltd. v. Kranz*, 545 So. 2d 276, 278 (Fla. 3d DCA 1989) (finding that a double "recovery on the same element of damages is prohibited"); *Besett v. Basnett*, 437 So. 2d 172, 173 (Fla. 2d DCA 1983). To prevent such a double recovery, Defendants request that this matter be stayed until the 2014 Bankruptcy Proceeding is adjudicated.

## III.      The statute of limitations expired on any alleged damages that Plaintiff alleges occurred prior to 2012

To the extent Plaintiff seeks to recover any damages for actions that occurred prior to 2012, the statute of limitations on such claims has expired. Defendant anticipates that Plaintiff will try to avoid a stay by arguing that the damages that arose prior to the 2012 loan are ripe for adjudication in this lawsuit. However, under Florida law, the statute of

limitations for claims for legal malpractice and breach of fiduciary duty is two years from when the claim "is discovered or should have been discovered with the exercise of due diligence". Fla. Stat. §95.11(4)(a).

Plaintiff alleges Mr. Du was a manager of Mapuche from 2005 through at least 2010. *See* Compl. at ¶¶ 27,41, and 52. Mr. Du, as a manager of Mapuche and as chairman of Ganglu, either knew or should have discovered any potential claims against Defendants during his time as manager. There are no allegations in the Complaint that Mr. Du did not have whatever access to all records of Mapuche from 2004 through 2012. Thus, the statute of limitations on any alleged damages arising prior to the 2012 loan has expired.

To the extent the damages were not discovered during Du's management of the company, then they could and should have been easily discovered in the 2012 Bankruptcy. Plaintiff alleges Defendants helped Mr. Chen create secret governing documents so that Mr. Chen could obtain a $15 million loan from Canpartners for the Project in 2010. *See* Compl. at ¶ 91. Plaintiff alleges that it did not know about the Canpartners loan. Id. at ¶ 92. Even if Mr. Chen was able to obtain the loan without the knowledge of Mr. Du or Plaintiff, Plaintiff, through its Chairman and Mapuche's manager Mr. Du, could have and should have discovered the loan during the 2012 Bankruptcy. In fact, the Canpartners loan was listed in early 2012 in the 2012 Bankruptcy schedules and was the largest claim paid in the 2012 Bankruptcy. *See* **Ex. "3"**.

Plaintiff alleges that it loaned the $48.65 million to Mapuche so that Holdings and Capital/Fashion could emerge from the 2012 Bankruptcy. Mr. Du, as the chairman of

Ganglu and a manager of Mapuche, could have and should have discovered the 2010 loan by a simple review of the docket for the 2012 Bankruptcy. The Commitment Letter Plaintiff provided in the 2012 Bankruptcy references both the Plan of Reorganization and the Schedules attached to the plan. *See* **Ex. "4"**. Those schedules revealed the Canpartners loan and that Canpartners was the largest creditor in the 2012 Bankruptcy. Thus, Plaintiff was put on notice that Mr. Chen obtained the 2010 loan, which Plaintiff alleges he could only do through the amended operating agreements for the Fashion Mall Entities. The "surprise" that Plaintiff now claims relating to the 2010 amended operating agreements is completely undermined by Plaintiff's claim it was unaware of the 2010 Canpartners loan. By knowing Canpartners had a loan from the public schedules and referenced in each Plan of Reorganization from the 2012 Bankruptcy, Plaintiff had to have notice of the very loan about which it now claims it had no knowledge. Plaintiff should have known of the amended operating agreements by 2012. Plaintiff choose not to investigate the 2010 loan or the amended operating agreements in 2012. Nevertheless, the information was available to Plaintiff via the 2012 Bankruptcy docket. Therefore, any alleged damages that occurred prior to the 2012 Bankruptcy are barred by the statute of limitations and should not be considered for the purpose of this motion to stay.

## IV.   Conclusion

For the reasons stated herein, Defendants request that this Court stay the matter pending the resolution of the 2014 Bankruptcy Proceeding, including any adversary actions brought in the 2014 Bankruptcy Proceeding.